**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROCKHILL INSURANCE
COMPANY,

    Plaintiff,

v.                                                     Case No. 3:15-cv-1419-J-32MCR

NORTHFIELD INSURANCE
COMPANY,

    Defendant.

_____

## **O R D E R**

This case is about which insurance company is better at writing a broad "other insurance" provision, one suitable for all occasions, so that its coverage becomes excess and the other insurer's primary.[1] It is before the Court on the parties' cross motions for summary judgment. (Docs. 32, 39). Defendant Northfield Insurance Company ("Northfield") moved for summary judgment (Doc. 32), Plaintiff Rockhill Insurance Company ("Rockhill") filed an amended Response (Doc. 42), and Northfield replied (Doc. 45). Rockhill also moved for

---

[1] The Court is dubious whether this "arms race" (as Rockhill's counsel described it) to write continuously more expansive "other insurance" provisions represents sound insurance law policy. Nevertheless, this Court's task is limited to interpreting the two insurance policies at hand.

summary judgment (Doc. 39), Northfield responded (Doc. 46), Rockhill replied (Doc. 49), and Northfield filed a sur-reply (Doc. 52). On October 13, 2017, the Court held a hearing on the motions, the record of which is incorporated herein. (Doc. 55).

I.  **BACKGROUND**

This dispute between insurance companies concerns coverage priority in relation to the settlement of a wrongful death suit. On November 10, 2010, Leroy McDonald was shot and killed in the Briar Oaks at Oakleaf Plantation townhome community ("the Community") (Doc. 39-1), which is overseen by the Briar Oaks at Oakleaf Plantation Townhomes Owners' Association, Inc. ("Briar Oaks"). (Doc. 11). On June 1, 2007, First Coast Association Management, LLC ("First Coast") entered into a contract with Briar Oaks to manage the Community. (Doc. 39-6). This contract was in effect on November 10, 2010. Id. On November 10, 2010, Briar Oaks had insurance coverage through Rockhill (Doc. 39-4), and First Coast had insurance coverage through Northfield (Doc. 39-5).

In 2012, Latasha McDonald, as the personal representative of the Estate of Leroy McDonald, filed a wrongful death action against First Coast and Briar Oaks ("Underlying Action"). (Doc. 11). In 2015, a jury trial returned a verdict in favor of McDonald for $2,658,852, with First Coast and Briar Oaks jointly and severally liable for 70% and Briar Oaks solely liable for 30%. (Doc 39-2).

Subsequently, the parties agreed to a settlement, paying Leroy McDonald's Estate $2,790,000, divided among three insurers.[2] (Doc. 39-3).

On June 30, 2016, Rockhill filed its First Amended Complaint ("Complaint") (Doc. 11), seeking a declaratory judgment determining the priority of coverage for the Underlying Action, judgment to recover fees and costs incurred in the Underlying Action,[3] and costs. (Doc. 11 at 4). Northfield filed an answer and counterclaim seeking a declaratory judgment, attorney's fees, and costs. (Docs. 11, 21).

**A. The Rockhill Policy**

Rockhill issued businessowners' policy THB001324-01 to Briar Oaks, providing both first party property coverage and business liability coverage. (Doc. 39 at 3). Section I of the policy explains the coverage for first party property, Section II explains the coverage for business liability, and Section III contains policy conditions common to Sections I and II. (Doc. 39 at 3). The policy

---

[2] The settlement allocated the amount among the insurers as such: Rockhill – $1,269,000; Northfield – $890,000; and AGLIC – $631,000. AGLIC was an excess insurer and is not a party to the current suit.

[3] The Complaint seeks to "recover the fees and costs incurred in defending NORTHFIELD'S insured, FIRST COAST." (Doc. 11). However, in its motion for summary judgment, Rockhill seeks reimbursement from Northfield to equalize their payments for the settlement. (Doc. 39 at 21). Because Florida does not allow for recovery of attorney's fees and costs when defending a mutual insured, see Argonaut Insurance Co. v. Maryland Casualty Co., 372 So. 2d 960, 963 (Fla. 3d DCA 1979), the Court treats Rockhill's claim as one for equitable contribution regarding the settlement payments. (Doc. 39 at 21).

3

also contains multiple amendments, endorsements, exclusions, and limitations in separate forms. (Doc. 39-4). The coverage provides up to $1 million per occurrence as part of its liability and medical expense limit. (Doc. 39-4 at 4). First Coast is an omnibus insured under the policy.[4] (Doc. 39-4 at 56). Section III of the policy contains an "other insurance" provision, making the coverage excess over other insurance in certain situations. (Doc. 39-4 at 63).

### B. The Northfield Policy

Northfield issued First Coast a commercial policy numbered WS023188 that contains a liability limit of $1 million per occurrence. (Doc. 32 at 7). First Coast is the sole named insured under the Northfield policy, and the parties agree that Briar Oaks is not insured under that policy. (See Doc. 39 at 6). The Northfield policy also contains an "other insurance" provision, a combination endorsement to the "other insurance" provision, and a second endorsement. The "other insurance" provision, as modified by the combination endorsement, provides that the policy is excess over other valid and collectible insurance in certain situations. This combination endorsement further states that if excess, Northfield has no duty to defend the insured in any suit if another insurer has

---

[4] "An 'omnibus insured' is one who is covered by a provision in the policy but not specifically named or designated. Additionally, the rights of an 'omnibus insured' flow directly from his or her status under a clause of the insurance policy without regard to the issue of liability." Cont'l Cas. Co. v. Ryan Inc. E., 974 So. 2d 368, 374 (Fla. 2008) (citations and quotations omitted).

such a duty, and that Northfield will only pay the amount that exceeds the other insurance coverage and deductibles. (Doc. 39-5 at 28, 39–40). The second endorsement makes the coverage excess when the liability arises from First Coast's activities as a property manager.

## II. STANDARD OF REVIEW

Upon review of cross motions for summary judgment, "the Court must determine whether either party deserves judgment as a matter of law on the undisputed facts." T-Mobile S. LLC v. City of Jacksonville, 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008). "When the only question a court must decide is a question of law, summary judgment may be granted." Saregama India Ltd. v. Mosley, 635 F.3d 1284, 1290 (11th Cir. 2011). Insurance contract interpretation is a matter of law properly decided on summary judgment. LaMadrid v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 567 F. App'x 695, 700 (11th Cir. 2014).

## III. ANALYSIS

### A. Jurisdictional Issues

This action is appropriately brought under 28 U.S.C. § 1332.[5] Both parties seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. When

---

[5] Rockhill is an Arizona corporation with its principal place of business in Missouri. Northfield is an Iowa corporation. The Complaint states that Northfield's principal place of business is Minnesota, and the insurance contract lists a Minnesota address. (Doc. 11). However, the Answer (Doc. 21) states that Northfield's principal place of business is Connecticut. Either way, the parties are diverse. The amount in controversy is alleged to be in excess of

the Complaint and Answer and Counterclaims were filed, the Underlying Action had not yet settled. However, on January 11, 2017, the parties settled the Underlying Action. At the October 13, 2017 hearing, the Court, citing Housing Enterprise Insurance Co. v. AMTRUST Insurance Co., 212 F. Supp. 3d 1330, 1338 (N.D. Ga. 2016), expressed concern that it may not have jurisdiction to provide declaratory relief.[6] The parties, at the request of the Court, submitted a joint brief responding to the Court's concerns. (Doc. 56).

In their Joint Brief on Jurisdiction and Notice Regarding Settlement, the parties provide two reasons why this Court has jurisdiction. (Doc. 56). First, the settlement agreement did not destroy jurisdiction to provide declaratory relief because the settlement reserves the parties' rights to maintain this action. (Doc. 56 at 1–5). The second reason is that the complaint could be liberally construed to include a claim for equitable contribution over which the Court maintains jurisdiction. (Doc. 56 at 5–6). Although the Complaint was unartfully drafted—

---

$75,000.

[6] To meet the Article III standing requirement when seeking declaratory relief, there must be a substantial likelihood that the plaintiff will suffer injury in the future. Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999). "Where an insurer has already paid out a claim under its policy, and seeks contribution from a co-insurer for the expense, declaratory relief concerning the priority of the insurers' policies is unavailable because such declaratory relief concerns only past events, not future injury." AMTRUST, 212 F. Supp. 3d at 1338 (citing Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, 609 F. App'x 972, 979 (11th Cir. 2015)).

containing no counts, and titled "Plaintiff's Amended Complaint for Declaratory Relief"—the "wherefore" clause contains several requests for relief, at least one of which can be construed as an equitable contribution claim. (Doc. 11 at 4). As the Court agrees that the Complaint could be interpreted to include a claim for equitable contribution and that the parties have a concrete dispute regarding coverage, it retains jurisdiction.[7]

**B. Florida Law Governing the Interpretation of Insurance Contracts[8]**

Florida interprets insuring or coverage clauses in the broadest possible manner to provide the greatest extent of coverage. Keenan Hopkins Schmidt & Stowell Contractors, Inc. v. Cont'l Cas. Co., 653 F. Supp. 2d 1255, 1263 (M.D. Fla. 2009). Courts view the policy "as a whole and give every provision its full meaning and operative effect." Trailer Bridge, Inc. v. Ill. Nat. Ins. Co., 657 F.3d 1135, 1141 (11th Cir. 2011) (quotations omitted). The policies are interpreted according to their plain meaning, but if ambiguities exist they are construed to

---

[7] As the Court has jurisdiction over a claim for equitable contribution, it need not address the parties' other jurisdictional arguments involving the settlement agreement.

[8] Federal courts sitting in diversity apply the choice of law rules of the forum State. Rando v. Gov't Emps. Ins. Co., 556 F.3d 1173, 1176 (11th Cir. 2009). For contracts, Florida follows the lex loci contractus standard, meaning that the place of contracting is the law that governs the contract. Id. Both insurance policies appear to have been signed in Florida, and the parties have not introduced any evidence to the contrary.

7

favor coverage. Id. Policy language is ambiguous when it is susceptible to multiple reasonable interpretations. Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co., 508 F. Supp. 2d 1167, 1175 (M.D. Fla. 2007). Undefined words or phrases should be given their common everyday meaning. Id. "Although exclusionary clauses cannot be relied upon to create coverage, principles governing the construction of insurance contracts dictate that when construing an insurance policy to determine coverage the pertinent provisions should be read in pari materia." Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co., 133 So. 3d 494, 498 (Fla. 2014).

### C. The "Other Insurance" Provisions

This dispute concerns the interpretation of "other insurance" provisions in the Rockhill and Northfield policies, both of which cover First Coast. Rockhill alleges that both insurance policies are co-primary because they each contain "other insurance" provisions that attempt to make the policy excess to any other coverage to which the insured is entitled. (Doc. 39 at 9). Northfield alleges that Rockhill's "other insurance" provision does not apply and that Northfield's policy is excess over Rockhill's policy. (Doc. 32 at 9).

In Florida, "where two or more policies that apparently cover the same loss both contain excess 'other insurance' provisions, the clauses are deemed 'mutually repugnant.'" Keenan, 653 F. Supp. 2d at 1263. Florida does not recognize superiority of one excess "other insurance" provision over another.

8

Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc., 80 F. Supp. 3d 1311, 1320 (S.D. Fla. 2015). When the excess "other insurance" provisions cancel each other out, each insurer is liable for a pro rata share in accordance with their policy coverage limits. Id. at 163–64. Thus, the Court must consider whether the "other insurance" provisions in both the Rockhill and Northfield policies apply to the Underlying Action.

1. Northfield's "other insurance" provision makes its coverage excess.

The Northfield policy's "other insurance" provisions apply to First Coast vis-a-vis the Underlying Action. (Doc. 32 at 9; Doc. 39 at 13). Northfield's "other insurance" provision, as modified by the combination endorsement, states:

**4. Other Insurance**

If other valid and collectible other insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

**(i)** Another insurance company;

. . . .

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the

> method described in Paragraph **c.** below.
>
> . . . .
>
> ### b. Excess Insurance
>
> This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:
>
> . . . .
>
> **(5)** That is available to the insured when the insured has been added as an additional insured by attachment of an endorsement under any other insurance <u>or is any other insured that is not a named insured under such insurance.</u>

(Doc. 39-5 at 28, 39–40) (emphasis added). First Coast is an omnibus insured under Rockhill's insurance policy. (Doc. 39 at 4). Therefore, First Coast is an insured that is not a named insured under the Rockhill policy—meaning that Northfield's excess "other insurance" combination endorsement applies.

Additionally, Northfield's policy contains a "Real Estate Property Managed" endorsement that states:

> **REAL ESTATE PROPERTY MANAGED**
>
> This endorsement modifies insurance provided under the following:
> > COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> . . . .
>
> With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

(Doc. 39-5 at 61). The liability from the Underlying Action arose from First Coast's management of the Community. Therefore, the Real Estate Property Managed endorsement applies, making the Northfield policy excess.

Rockhill contends that these two endorsements are "inconsistent" and "irreconcilable" and should cancel each other out. (Doc. 39 at 15). However, both provisions can be given operative effect. See Trailer Bridge, 657 F.3d at 1141. Although the provisions may sometimes overlap, they are separate and independently operable means of limiting coverage to excess. See Tudor Ins. Co. v. Am. Cas. Co. of Reading, Pa., No. 3:15CV166-MCR/CJK, 2017 WL 1217183, at *6 (N.D. Fla. Mar. 31, 2017). Therefore, Northfield's policy contains "other insurance" provisions that are applicable to its coverage for the Underlying Action.

2. Rockhill's "other insurance" provision does not apply to the Underlying Action.

Rockhill's "other insurance" provision has three subsections. (Doc. 11-1 at 63). This provision states:

> **SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)**
> . . . .
>
> **H. Other Insurance**
>
> **1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of **Section I – Property.**
> . . . .
>
> **2.** Business Liability Coverage is excess over:

11

> a. Any other insurance that insures for direct physical loss or damage; or
>
> b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment or endorsement.

(Doc. 39-4 at 63) (emphasis in original).

Rockhill asserts that subsection H(1) is broad, covering any "loss or damage," and should not be constrained by the final sentence that arguably limits its applicability to the Property section of the policy. (Doc. 42 at 8). Northfield says that the final sentence of H(1) limits that subsection only to situations involving property damage. (Doc. 46 at 6). As the Underlying Action did not involve property damage, if Northfield is correct, H(1) would not apply to the Underlying Action.

Rockhill's policy contains two coverage sections: "Section I – Property" and "Section II – Business Liability." (Doc. 11-1). The "other insurance" provision also has two sections that explain when coverage is excess; subsection H(1) references Section I – Property, and subsection H(2) refers to Business Liability. (Doc. 11-1 at 63). Throughout the policy, "Section I – Property" and "Section II – Liability" are used to refer back to those specific coverage sections—the "other insurance" provision should be treated no differently. See

Intervest Const. of Jax, 133 So. 3d at 498 (stating that provisions of an insurance contract should be read in pari materia); (Doc. 11-1).

Thus, Rockhill's broad reading of subsection H(1) fails to give meaning to the final sentence that (albeit awkwardly) limits the excess provision to "Section I – Property" claims. See Trailer Bridge, 657 F.3d at 1141 (explaining that every provision should be given "its full meaning and operative effect"). Rockhill's reliance on W9/PHC Real Estate LP v. Farm Family Casualty Insurance Co., 970 A.2d 382, 395 (N.J. Super. A.D. 2009) is misplaced. (Doc. 45 at 5). Although Rockhill's subsection H(1) contained the same first sentence as the provision at issue in W9/PHC, the second sentence in that case did not limit itself to property claims. See W9/PHC, 970 A.2d at 395; (Doc. 11-1 at 63).[9] H(1) does not apply to the Underlying Action.

Next, Rockhill asserts that subsection H(2) also makes its policy excess vis-a-vis the Underlying Action. (Doc. 39 at 11). Subsection H(2) of the "other insurance" provision contains parts (a) and (b) that stipulate when Business Liability Coverage is excess. (Doc. 11-1 at 63). The policy defines Business Liability Coverage as those sums that Rockhill "becomes legally obligated to

---

[9] The second sentence in the "other insurance" provision in W9/PHC, upon which Rockhill relies, states: "But we will not pay more than the applicable Limit of Insurance." W9/PHC, 970 A.2d at 395.

pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies." (Doc. 11-1 at 47).

Rockhill does not argue that H(2)(b) applies to this case. As to H(2)(a), Rockhill says that "damage" should be separated from the clause "direct physical loss" to allow a reading that covers more than just property liability. (Doc. 39 at 11–12). Northfield claims that the phrase "direct physical loss or damage" unambiguously refers to first party property insurance. (Doc. 46 at 8). Under this view, "direct physical" modifies both "loss" and "damage" and only refers to property loss or damage. (Doc. 46 at 8–9).

The phrase "direct physical loss or damage" is not a defined term in the policy and must be given its common meaning. See Pac. Emp'rs., 508 F. Supp. 2d at 1175; (Doc. 39 at 11). Several cases have analyzed this phrase in the context of whether certain injuries were a "direct physical loss or damage" covered under the policy. See, e.g., Phila. Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280, 287–89 (S.D.N.Y. 2005) (holding that economic loss caused by the FAA shutting down the Philadelphia Airport was not a "direct physical loss or damage" because economic losses are not physical in nature); Huether v. Nodak Mut. Ins. Co., 871 N.W.2d 444, 447 (N.D. 2015) (holding that loss of use damages were not covered under a "direct physical loss or damage" provision because loss of use damages are not physical nor a direct result of the covered property damage).

One court has examined the phrase "direct physical loss or damage" in the context of an "other insurance" provision. See N. Pac. Ins. Co. v. Travelers Cas. Ins., No. C15-5396 BHS, 2016 WL 69819, at *5 (W.D. Wash. Jan. 6, 2016). In North Pacific, North Pacific Insurance Company sued Travelers for the costs of defending and indemnifying a common insured in an underlying personal injury suit. Id. at *1. At issue was whether North Pacific's "other insurance" provision applied. Id. The provision was identical to Rockhill's H(2)(a) provision. See id. at *2; (Doc. 11-1 at 63). The North Pacific court held that the phrase "direct physical loss or damage" applied to property damage and not monetary damages. N. Pac., 2016 WL 69819, at *5. The court based its decision on the distinction between "damage" and "damages." Id. The court further explained:

> The North Pacific policy differentiates between "damages" and "damage" throughout the policy. Notably, the policy uses "damages" in the liability coverage section and "damage" in the property coverage section. The policy provides liability coverage for "<u>sums that the insured becomes legally obligated to pay as damages</u> because of 'bodily injury,' 'property damage' or 'personal and advertising injury.'" Meanwhile, the policy provides property coverage for "<u>direct physical loss of or damage</u> to Covered Property."
> Based on this language, "damages" has a different meaning than "damage" in the North Pacific policy. "Damages" refers to money owed to a plaintiff because of an injury or harm, while "damage" refers to injury to property. As noted above, Clause H.2(a) pertains to "direct physical loss or damage" rather than "damages." Clause H.2(a) therefore applies to property coverage, which is not at issue in this case. For these reasons, the Court concludes Clause H.2(a) is not applicable.

Id. (citations omitted) (emphasis in original).

Rockhill's policy also uses the term "damage" exclusively throughout its Property coverage section and the term "damages" in its Business Liability coverage section. (Doc. 11-1). A closer examination reveals that the phrase "direct physical loss or damage" appears more than twenty times in Section I – Property, but is not included in Section II – Liability. (See Doc. 11-1). Rockhill urges an expansive reading because, unlike elsewhere in the policy, the phrase "direct physical loss or damage" in H(2)(a) is not subsequently limited. (Doc. 11-1 at 12). However, Rockhill's examples undermine its argument, as each demonstrates that "direct physical loss or damage" refers to property. Id. Further, since an excess "other insurance" provision limits when the insurer provides coverage, it should be interpreted to "provide the greatest extent of coverage" and thus given its natural limited reading. See Keenan, 653 F. Supp. 2d at 1262.

The Court holds that Rockhill's "other insurance" provision does not apply to the Underlying Action. Northfield's "other insurance" provision does apply to the Underlying Action. Therefore, the Northfield policy is excess over the Rockhill policy. Because this ruling is case dispositive, the Court does not address the parties' other arguments.

Accordingly, it is hereby

**ORDERED:**

1. To the extent stated herein, Northfield's Motion for Summary Judgment (Doc. 32) is **GRANTED**.

2. To the extent stated herein, Rockhill's Motion for Summary Judgment (Doc. 39) is **DENIED**.

3. By separate Order, the Court will enter judgment in favor of Defendant Northfield Insurance Company and against Plaintiff Rockhill Insurance Company as to Rockhill's equitable contribution claim.

4. After the Judgment has been entered, the Clerk shall terminate all pending motions and deadlines and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 8th day of November, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

jjb
Copies to:

Counsel of record